1  ALEX G. TSE (CABN 152348)
   Acting United States Attorney
2
   BARBARA J. VALLIERE (DCBN 439353)
3  Chief, Criminal Division

4  KIMBERLY HOPKINS (MABN 668608)
   ANDREW F. DAWSON (CABN 264421)
5  Assistant United States Attorneys

6       450 Golden Gate Avenue, Box 36055
        San Francisco, California 94102-3495
7       Telephone: (415) 436-7200
        FAX: (415) 436-7234
8       Kimberly.Hopkins@usdoj.gov
        Andrew.Dawson@usdoj.gov
9
   Attorneys for United States of America
10
                      UNITED STATES DISTRICT COURT
11
                    NORTHERN DISTRICT OF CALIFORNIA
12
                          SAN FRANCISCO DIVISION
13

14  UNITED STATES OF AMERICA,              )   No.: CR 17-0175 CRB
                                           )
15         Plaintiff,                      )   UNITED STATES' RESPONSE RE THE
                                           )   "STATEMENT OF THE CASE"
16     v.                                  )
                                           )   Pretrial Conference:   July 30, 2018
17  LEN TURNER and LANCE TURNER,           )   Time:  2:00 P.M.
                                           )   Court:  Hon. Charles R. Breyer
18         Defendants.                     )
    ———————————————————————————           )
19

20         In anticipation of the upcoming trial in the above-captioned case, the government and the

21  defendants submitted separate proposals to the Court regarding what it should say to the prospective

22  jurors about the case at the outset of jury selection.  The United States' proposal is found in Document

23  204-1, and consists of a brief statement advising the venire about the general nature of the charge, that

24  is, that the defendants conspired to defraud the U.S. Department of Energy (DOE) by submitting a bid

25  for a DOE building contract under false pretenses.  Dkt. 204-1.

26         Defendants Len Turner and Lance Turner object to this brief statement, and have submitted a

27  proposed statement which contains more detail, including language from the indictment.  Dkt. 203.

28  Specifically, the defendants ask the Court to read aloud selected sentences from paragraph 46 of the

1   indictment – one of several paragraphs that describe the scheme to defraud.   Dkt. 210, at 5.   The

2   defendants claim that providing the prospective jurors with this more fulsome description of some of the

3   allegations in the indictment is necessary "in order to respond to the Court's queries as to whether they

4   can fairly decide this case…".   Dkt. 210, at 2.   The defendants further assert that the government's

5   leaner statement reflects an effort to avoid instructing the jury on the "specific mental state elements of

6   the charged crime," and risks an "unconstitutional amendment of the indictment."   *Id*. at 4.

7        The defendants' approach is off the mark for several reasons.   First, the stage of the trial under

8   discussion here is very early in the proceedings.   It is the point at which the Court introduces the case to

9   the courtroom full of prospective jurors just before proceeding to the voir dire process.   The

10  government's understanding is that this Court's practice is to give a brief statement of the nature of the

11  case, and not to go into any detail about the charges at that point.   Indeed, as far as the government is

12  aware, it is this Court's practice not to give or read the indictment to the jury at any point in the

13  proceedings.

14       Second, there is no requirement that a petit jury be provided the indictment in order to render a

15  valid verdict.   The Ninth Circuit has long held that, while "it is well settled that the jury must be fairly

16  apprised of the nature of the charges against the defendant, … this does not necessarily require a reading

17  of the indictment to the jury either in whole or in part."   *Robles v. United States*, 279 F.2d 401, 403-04

18  (9th Cir. 1960).   Rather, "[t]he decision to read an indictment to the jury is within the sound discretion of

19  the trial court."   *United States v. Atkinson*, 966 F.2d 1270, 1274 (9th Cir. 1992)(upholding trial court's

20  decision to provide indictment to the jury).   If there is no requirement that the Court read or provide the

21  indictment to the petit jury in order for it to make a fair decision on the charge, there can certainly be no

22  error in electing not to read the language in the indictment to the venire at the outset of voir dire.

23       Third, the government notes that in requesting that the Court give the prospective jurors more

24  detail about the allegations, the defendants have selectively drawn certain sentences from one of several

25  paragraphs in Count Eight of the indictment, and have added language not contained in any of the

26  paragraphs.   The defendants do not explain why those particular phrases are essential to the prospective

27  jurors' ability to respond to the Court's inquiries as to whether they can be fair and impartial jurors, nor

28  do they explain why the omitted phrases are inessential.

1   Fourth, the defendants express concern about the government's motives in suggesting a brief

2   statement of the nature of the charge, and worry that the government is seeking to avoid proving what

3   the grand jury charged in the indictment.  If that concern is to be remedied by advising the prospective

4   jurors of certain allegations from the section of the indictment entitled "The Scheme to Defraud," *e.g.*

5   "[t]he defendants submitted the bid knowing that it was not a genuine bid," [Dkt. 1, ¶ 46, lines 17-18],

6   then that concern can only be fully and fairly remedied by reading *all* of the allegations contained in that

7   Section.  If the defendants are truly worried about some sort of incipient risk of variance or constructive

8   amendment, then the only reasonable and fair approach is to read paragraphs 44 through 46 in their

9   entirety.  The government submits that this is neither necessary, nor practical.  But if the Court is

10  inclined to read language from the indictment to the venire, then it should not be a selective reading.

11  The venire should be advised of all of the allegations against the defendants.

12  Fifth, rather than being illuminating, the government submits that reading language from the

13  indictment will lead to confusion among the prospective jurors.  This concern is highlighted by the fact

14  that the defendants' proposed Statement of the Case inaccurately characterizes the allegations in the

15  indictment.  For instance, supposedly reciting the allegations in the indictment, the defendants propose

16  that the Court advise the venire as follows:  "*The government alleges that each defendant did so*

17  *knowing that the bid was not a genuine bid and knowing that it was for the sole purpose of artificially*

18  *ensuring* that a supposed bid by William Myles, a paid FBI undercover operative, *was the lowest bid on*

19  *the project*".  Dkt. 210, at 2 (emphasis in original).  This is a misstatement of what is alleged in

20  paragraph 46 of the indictment.  While the indictment does allege that the defendants submitted the bid

21  knowing that it was not a genuine bid, the indictment does not allege that they did so *knowing* that it was

22  for the sole purpose of ensuring that Mr. Myles was the lowest bid.  *See*, Indictment, Dkt. 1, ¶ 46, lines

23  18-22.

24  As another example of inaccuracy, the defendants' proposed Statement of the Case says the

25  indictment alleges that Len and Lance Turner engaged in a conspiracy to defraud the United States

26  Department of Energy.  Dkt. 210, at 2.  That is not correct.  The indictment alleges that Len Turner and

27  Lance Turner *and Taj Reid* conspired to defraud the DOE.  That distinction is critical.  The jury cannot

28  be led to believe that if they find that either Len Turner or Lance Turner did not engage in the

conspiracy, then the other is necessarily not guilty.  Indeed, the charge is that the three men engaged in the conspiracy.  If the jury finds that either Len Turner or Lance Turner conspired with Taj Reid, then that is sufficient for a conviction on Count Eight.

All of this illustrates exactly why the Court's practice of providing the prospective jurors with a succinct statement of the nature of the case at the very outset of the voir dire process makes sense and avoids unnecessary confusion.

As to the defendants' concern that the government is signaling that it is going to attempt to evade its obligation to prove the crime charged and the elements of that crime, that is a separate matter that will be addressed at the point of instructing the jury at the end of the case, and if there is a conviction, in post-trial motions and/or appeal if there is a genuine issue of constructive amendment of prejudicial variance.  The government is mindful of those matters and has no intention of either "altering the charging terms of the indictment," *United States v. Adamson*, 291 F.3d 606, 614 (9th Cir. 2002)(describing what constitutes constructive amendment of an indictment), or presenting evidence at trial that "proves facts materially different from those alleged in the indictment."  *Id*. (discussing prejudicial variance).

The government does note, however, that in making their argument about the need for a more detailed statement of the case to the venire, the defendants seek to place an additional burden of proof on the government.  That is, the defendants insist that because the indictment includes an allegation in the description of the scheme to defraud that the defendants knew that the bid submitted to the DOE was not a genuine bid, the government will now be required to prove "that precise theory of knowledge, intent and purpose."  Dkt. 210, at 4.  The defendants make the same argument in relation to their proposed jury instruction on the elements of Count Eight of the indictment.  They state that "[t]he description of the charge omits the critical language as to the specific intent which is alleged against the defendants in the indictment, and thus must be proven by the government."  Dkt. 199, at 32.

This is incorrect.  The government must prove the elements of the offense of conspiracy to defraud the government in violation of that prong of Section 371.  Those elements are set out in the government's proposed jury instruction entitled "Conspiracy to Defraud the United States," which is based on Ninth Circuit Model Criminal Instruction 8.21.  Dkt. 199, at 30-31.  The statute does not

1    contain a specific intent or specific knowledge element.  Therefore, the applicable instruction on

2    "knowingly" in the context of this offense is found at the Ninth Circuit Model Instruction 5.7 (2018

3    edition).  The fact that the description of the scheme to defraud in the indictment includes an allegation

4    that the defendants knew that the bid submitted to the DOE was not a genuine bid does not alter the

5    elements of the crime of conspiracy, not does it add an element of knowledge that the government must

6    now prove.[1]

7            Finally, while the government understands the perils of constructive amendment and variance,

8    and has no intention of taking that approach, the cases cited by the defendants do not support their

9    contention that if it is alleged in the indictment, the government must prove it.  As the Ninth Circuit

10   observed in *Adamson*, *supra*, 291 F.3d at 614, "the Fifth Amendment guarantees a criminal defendant

11   the right to stand trial only on charges made by a grand jury in its indictment."  (citation omitted).  The

12   cases cited by the defendants, *Stirone v. United States*, 361 U.S. 212 (1960); *United States v. Shipsey*,

13   190 F.3d 1081 (9th Cir. 1999); and *United States v. Tsinhnahijinnie*, 112 F.3d 988 (9th Cir. 1997), stand

14   for the same rule, but emphasize that the jury cannot be permitted to convict on *charges or elements* that

15   are different than those alleged in the indictment.  *See e.g., Stirone*, at 217-218 ("a court cannot permit a

16   defendant to be tried on charges not made in the indictment";  the indictment must charge the elements

17   of the offense and those must be proved); *Shipsey*, at 1087 (the indictment set forth the theory that the

18   defendant obtained money by means of false representations and omissions, therefore, the government

19   was obligated to prove this theory of theft).  That is not the same as having to prove beyond a reasonable

20   doubt every allegation in the indictment.  *Also see, United States v. Wilbur*, 674 F.3d 1160, 1178 (9th

21   Cir. 2012)(holding that "constructive amendment only applies to the broadening, rather than the

22   narrowing, of indictments," and citing the Supreme Court's holding in *United States v. Miller*, 471 U.S.

23   130, 144 [1985], where the Court "rejected the argument that 'it constitutes an unconstitutional

24   amendment to drop from an indictment those allegations that are unnecessary to an offense that is

25   clearly contained within it.'")

26

27          [1] Without citing authority for their position, the defendants submit that the Court's instruction to

28   the jury on the elements of Count Eight must include a reading of the entirety of Count Eight of the
     indictment to the jury.  See Dkt. 199, at 32.

UNITED STATES' RESPONSE RE STATEMENT OF THE CASE

1    The applicability of these principles here is that in the instant indictment, the grand jury charged

2    the defendants with conspiring to defraud the DOE by "knowingly and intentionally" engaging in "an

3    illegal scheme to obtain the contract with the DOE to renovate LBNL Building 84, and thereby obtain

4    United States government funds to pay for the renovation, by means designed to impair, obstruct, and

5    defeat the lawful function of the DOE in awarding construction contracts through a fair, honest, and

6    competitive process." Dkt. 1, at ¶ 44, lines 21-25.  That is the charge.

7    The indictment then goes on to describe the theory of how the defendants went about that

8    scheme, that is, by engaging in a bid-rigging scheme. *Stirone*, *Shipsey*, and *Adamson* make it clear that

9    if, in this case, the government proceeds to introduce evidence at trial supporting a theory that the

10   defendants sought to obtain the DOE funds through a scheme other than the bid-rigging scheme

11   described in the indictment, for instance, through theft, then that would constitute a prejudicial variance.

12   If the Court were to instruct the jury that it could find the defendants guilty on Count Eight if they

13   agreed that the defendants conspired to obtain DOE money through theft, then that would be a

14   constructive amendment.  But that is far from requiring the government to prove every allegation in the

15   indictment of the manner and means through which the crime was committed, even where that allegation

16   does not involve an element of the offense charged.

17                                           CONCLUSION

18   For all these reasons, the government respectfully requests that in making its introductory

19   remarks to the prospective jurors, the Court advise the jurors about the nature of the case by using the

20   Statement of the Case submitted by the government.  Dkt. 204-1.

21

22   DATED: July 27, 2018                    Respectfully submitted,

23                                           ALEX G. TSE
                                             Acting United States Attorney

24

25        _____/s/_____
                                             KIMBERLY HOPKINS
26                                           ANDREW F. DAWSON
                                             Assistant United States Attorneys

27

28