BOERSCH SHAPIRO LLP
Martha Boersch (State Bar No. 126569)
Mboersch@boerschshapiro.com
1611 Telegraph Ave., Ste. 806
Oakland, CA 94612
Telephone: (415) 500-6640

Attorneys for Defendant
LANCE TURNER

RIORDAN & HORGAN
Dennis P. Riordan (State Bar No. 69320)
dennis@riordan-horgan.com
Donald M. Horgan (State Bar No. 121547)
don@riordan-horgan.com
523 Octavia Street
San Francisco, CA 94102
Telephone: (415) 431-3472

Attorneys for Defendant
LEN TURNER

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ERIC WORTHEN, et al.,<br><br>Defendants. | Case No. 17-cr-0175-CRB<br><br>**DEFENDANTS LEN AND LANCE TURNER'S SUPPLEMENTAL MEMORANDUM RE TESTIMONY OF WILLIAM MYLES** |

## BACKGROUND

In their pretrial motions *in limine*, Defendants Len and Lance Turner moved to exclude opinion testimony from the government's main witness, William Myles (Dkt. 193), but the Court did not address that portion of the motion.  In anticipation of Mr. Myles testimony about the defendants and their recorded conversations, the defendants renew and supplement that motion.

**I.      The Charges**

The government has alleged in Count Eight of the indictment a conspiracy to defraud the United States beginning on September 9, 2013.  The charged conspiracy allegedly involves a scheme "to defraud the United States, and an agency thereof, that is, the United States Department of Energy."  Ind. ¶ 43, line 16.  The indictment alleges, more specifically, that Taj Reid, Len Turner, and Lance Turner "knowingly and intentionally engaged in an illegal scheme to obtain the contract with the DOE to renovate LBNL Building 84, and thereby obtain United States government funds to pay for the renovation, by means designed to impair, obstruct, and defeat the lawful function of the DOE in awarding construction contracts through a fair, honest and competitive process."  Ind. ¶ 44, lines 21-26.

These charges arise from an elaborate government sting operation in which William Myles, a long time "confidential human source" (CHS) for the FBI and an African-American, operating here as William Joseph, sought out black minority contractors to whom he could present the "sting" concocted by the FBI. During a series of meetings and telephone conversations, Myles tells Len and Lance Turner that he is a major developer in town looking for minority—and specifically black—contractors with whom he can work, and that he has the capacity to bond the Turner Group, so that it can bid on large jobs or get jobs as the prime contractor.  He later proceeds to discuss the LBNL job and requests Len submit a proposal for the renovation higher than Joseph's to make Joseph's bid the lowest the lab receives.

**II.     Myles' Opinion Evidence**

The government has used the testimony of William Myles to bolster its case against these defendants by using two improper methods, both of which must be precluded.

First, the government has asked Myles to interpret for the jury the plain, un-coded words spoken by the defendants on the recordings, in a way that parrots the government's theory of the case.  For example, during yesterday's direct examination of William Myles, the government followed each clip played of a conversation between Myles and Taj Reid and/or Eric Worthen with the question of what Myles understood each statement by Reid or Worthen to mean, with Myles proceeding to put a spin on

LEN AND LANCE TURNER'S
SUPPLEMENTAL MEMORANDUM RE
TESTIMONY OF WILLIAM MYLES
Case No.: 17-cr-0175-CRB

the words helpful to the government. The defense did not object to that testimony because the Court had instructed the jury that all of the evidence and testimony concerning Reid and Worthen was not evidence of the guilt or innocence of the defendants. The defense anticipates, however, that the government will attempt the same tactic following its playing of recordings of conversations between Len and Lance Turner.

Second, the government has elicited Myles' opinion about whether given activity or words spoken are criminal or "dirty." During this trial, at Reid's trial, and in his testimony in past prosecutions, Myles has characterized his dealings with a given defendant as criminal in nature, in an apparent effort to bolster the government's case.  In this trial, for instance, when discussing his interactions with Taj Reid and Eric Worthen, Myles repeatedly opined that he was "doing dirty deals."  At Taj Reid's trial, Myles opined that he and Reid were talking about illegal activity.  *See, e.g.* RT of 5/22/18 232-233  ("And so as we keep talking about the risk, we talking about going out on a deep ledge. *We talking about the criminal activity we doing. Earlier we said we got to keep it in this room. And so this ledge we going on is the criminal activity that we about to do."*).

What Myles said to either defendant about the lab project and what they said to him in return is, of course, admissible on the issue of the defendants' mental state and intent, which are key to the jury's decision of this case. The jury will hear every word spoken on that subject, and the government will be able in closing to ask the jury to draw all the inferences in its favor that can be reasonably drawn from those exchanges. What the government may not do, however, is attempt to gild that lily with Myles' opinions as to what as to what he believes the defendants meant or whether he believed the discussion was "dirty" or "criminal." Such evidence of Myles' subjective opinions on the meaning of what the defendants said on the recordings would be irrelevant[1] to any issue the jury must decide, would constitute inadmissible opinion evidence, and would be patently prejudicial.

---

[1]  Myles' mental state is irrelevant to the charged conspiracy because a defendant cannot be convicted of conspiring with a government informant or agent who "secretly intends to frustrate the conspiracy."  *United States v. Escobar de Bright,* 742 F.2d 1196, 1198-99 (9th Cir. 1984); *see also United States v. Montgomery,* 853 F.2d 83 (2d Cir. 1988) (same); *United States v. Sears,* 343 F.2d 139 (5th Cir. 1965).

LEN AND LANCE TURNER'S
SUPPLEMENTAL MEMORANDUM RE
TESTIMONY OF WILLIAM MYLES
Case No.: 17-cr-0175-CRB

**ARGUMENT**

I.      **Myles' Opinions on the "Meaning" of Plain Words in Inadmissible**

The recordings in this case are in English and contain no secret code. The only thing difficult to understand is Myles' rambling statements themselves.  And whether those statements were coherent and understood by the two defendants in this case is the critical issue the jury must decide. Myles' subjective understanding and post hoc rationalizations or explanations of what he "meant" or what the Turners' meant or understood is irrelevant to the understanding of these two defendants and inadmissible.

In general, witnesses may not offer opinions on another's subjective intent. *See Feller v. Transamerica Life*, 2017 WL 6496803 at *12 (C.D. Cal 2017); *Dixon v. Rackley*, 2017 WL 1380547 *81 (E.D. Cal. 2017). Such testimony is speculative. *See* Fed. R. Evid. 602, 701. More particularly, Rule 704(b) bars testimony regarding a defendant's intent in a criminal case.

While courts have construed Rule 701 to allow law enforcement agents to testify about the meaning of words spoken by a defendant when those words are "coded" or "code-like," such opinion testimony is not permissible where the language is not coded and the words are clear. *United States v. Gadson,* 763 F.3d 1189, 1206-08 (9th Cir. 2014) (citing *United States v. Dicker,* 853 F.2d 1103, 1108-09 (3d Cir. 1988)).  The Ninth Circuit explained in *Gadson:*

> [A]n officer's testimony interpreting recorded conversations may fall outside the scope of Rule 701 if it is not based on the witness's perception (for example, if it is based on speculation or hearsay) or is not helpful to the jury . . . . Lay testimony is not helpful to the jury if it merely provides 'interpretation of clear statements' that are within common knowledge of the jury.

In *Dicker,* cited by the Court in *Gadson,* the Third Circuit reversed a conviction involving the export of military equipment without a proper license because the district court admitted an agent's testimony characterizing a recorded conversation between that agent and the defendant in a way that bolstered the prosecution theory, even though the actual words spoken were clear.  The agent "simply ascribed his own, illicit meaning to straightforward, potentially legitimate statements." 853 F.2d at 1110.  Such testimony is inadmissible under Rule 701.

LEN AND LANCE TURNER'S
SUPPLEMENTAL MEMORANDUM RE
TESTIMONY OF WILLIAM MYLES
Case No.: 17-cr-0175-CRB

1    Similarly, the Sixth Circuit reversed a murder conviction in *United States v. Freeman*, 730

2    F.3d 590 (6th Cir. 2013), because the case agent was allowed to "interpret" recordings of the

3    defendant speaking to others.  The Court noted that the agent "effectively spoon fed his

4    interpretations of the phone calls and the government's theory of the case to the jury, interpreting

5    even ordinary English language." *Id.* at 597.  Lay opinion testimony should not "merely tell the jury

6    what result to reach," or be "phrased in terms of inadequately explored legal criteria," or "form

7    conclusions for a jury that they are competent to reach on their own." *Id.* at 597. Where the language

8    used in recordings is plain, even if it is vague, it is "not for an agent to divine" what that language

9    means – that is the province of the jury.  *Id.* at 598.

10    The recordings in this case speak for themselves. They are in English and contain no secret

11    code. It will be the task of the jury to determine the meaning of the words spoken and whether the

12    defendants understood those words to have a particular meaning. Myles can claim no expertise in

13    "interpreting" the language he or another party uses, but he has a habit of opining on the meaning of

14    that language to give it a spin helpful to the government. Any effort on his part to do so at trial should

15    be prohibited.

16    **II.    Myles' Opinions as to the Defendants' Guilt is Inadmissible**

17    The defense anticipates that after the government plays the clip of 9/11/13 which ends with Len

18    Turner stating "I got it" and "I hear you," the government will seek to have Myles testify that he

19    understood Len to have agreed to commit the charged crime, to participate in a "scheme," to do "a dirty

20    deal," and/or to be talking about "the criminal activity we going that we about to do." Any testimony by

21    Myles regarding his opinion about the activity he is engaging in with Len Turner and/or Lance Turner

22    must be precluded.

23    The government would be barred by law from calling even a qualified legal expert to

24    testify regarding his or her opinion as to whether the evidence established criminal conduct on the

25    part of a defendant. The question of guilt or innocence is left entirely to the jury. *United States v.*

26    *Gaudin*, 515 U.S. 506, 514 (1995) ([T]he jury's constitutional responsibility is not merely to

27    determine the facts, but to apply the law to those facts and draw the ultimate conclusion of guilt or

28

LEN AND LANCE TURNER'S
                                          SUPPLEMENTAL MEMORANDUM RE
                                          TESTIMONY OF WILLIAM MYLES
                                          Case No.: 17-cr-0175-CRB

innocence.") That question is particularly complex in this case, involving a determination not only of the defendants' intent, but of the issues of inducement and predisposition.

Witnesses may not offer opinions as to legal conclusions. That is true for both expert witnesses, *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004), and lay witnesses, *United States v. Crawford*, 239 F.3d 1086, 1090 (9th Cir. 2001). Testifying that certain conduct is "criminal" or "unlawful" involves testifying to a legal conclusion—such testimony requires some understanding of the contours of the criminal law. *United States v. Baskes*, 649 F.2d 471, 478 (7th Cir. 1980). But the jury's understanding of the contours of the criminal law must come from one source and one source only: this Court's instructions on the elements of the alleged criminal offenses. That understanding should not be muddied by Myles' characterizations of what activities are "criminal."

Furthermore, Myles has admitted in the Reid trial that he knows little about the law. RT of 5/22/18 at 307 ("That's a different grade than me. My job is not the law, legalese or opinions. I don't know all of that.") Myles must be barred from opining that he was engaged in criminal or illegal conduct with the defendant. Likewise, it would be impermissible for him to offer his opinion that he and/or the government did not manufacture the charged offense, or induce or persuade Len Turner to commit it.

## CONCLUSION

For the foregoing reasons, and based on the record herein, the defendants' motion *in limine* should be granted and Myles precluded from offering improper opinion.

Dated:  August 22, 2018

BOERSCH SHAPIRO LLP

_/s/Martha Boersch_____
Martha Boersch
Attorneys for Lance Turner

RIORDAN & HORGAN

_/s/Dennis P. Riordan_____
Dennis P. Riordan
Attorneys for Len Turner

LEN AND LANCE TURNER'S
SUPPLEMENTAL MEMORANDUM RE
TESTIMONY OF WILLIAM MYLES
Case No.: 17-cr-0175-CRB